UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA PERGEAU,

      Plaintiff,                       Case No. 24-11795

v.

                                        F. Kay Behm

UNITED STATES OF AMERICA,      United States District Judge

      Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26) and DENYING MOTION TO <u>EXCLUDE PLAINTIFF'S EXPERTS AS MOOT (ECF No. 28)</u>**

**I.    PROCEDURAL HISTORY**

Plaintiff, Patricia Pergeau, filed this premises liability and negligence

action against the United States on July 11, 2024.  (ECF No. 1).  Defendant

filed a motion for summary judgment and a motion to exclude expert

testimony and opinions.  (ECF Nos. 26, 28).  These motions are fully briefed.

(ECF Nos. 31, 33, 36, 37).  The court held a hearing on February 11, 2026.  For

the reasons set forth below, Defendant's motion for summary judgment is

**GRANTED**.  Given the foregoing conclusion on Defendant's motion for

summary judgment, the court **DENIES** the motion to exclude the testimony and opinions of Plaintiff's experts as moot.

## II.   FACTUAL BACKGROUND

On November 15, 2022, Plaintiff, then 66 years old, went to the Social Security Administration's office located at 7385 Triangle Drive in Sterling Heights, MI.  (ECF No. 26-2, Pl. Dep., 10:23–24, 37:3–38:8).  At the time of Plaintiff's visit, the office layout was the following: The public entered the building through a set of double doors into the lobby.  (ECF No. 26-3).  The lobby had two waiting areas with seating, a desk staffed by a Federal Protective Service (FPS) Protective Security Officer (PSO), a check-in kiosk, and three service windows with counters and partitions in between.  *Id*.  The below photograph is a snapshot of the security camera footage from Plaintiff's visit; it shows the PSO standing at his desk and Plaintiff to his left walking away from the check-in kiosk.  *Id*.



The seating area by the service windows had several rows of chairs that faced a wall with a mounted television displaying the next appointment number.  (ECF 26-4, PL-1498 (post-incident photo taken by Plaintiff's husband)).  The wall also had a mounted literature rack that held various how-to guides.  *Id*.  Against the wall was a table that measured approximately 72 x 36 x 29 inches.  (ECF No. 26-5, JMME Report, p. 5).  The table was covered by a blue tablecloth that measured approximately 153 x 88 inches.  *Id*.  Nothing was on the table other than the tablecloth.  (ECF No. 26-2, 42:24–25).  The table and tablecloth had been in the Sterling Heights SSA lobby since at least 2013.  (ECF No. 26-6, Peifer Decl., ¶ 3).  At various times, the table had been used to display pamphlets.  *Id*.

The office's practice was to tuck the tablecloth's side fabric under the table's legs and keep the tablecloth tucked in at the sides.  (ECF No. 26-7, Schmittler Decl., ¶ 2).  The office did not keep the tablecloth's fabric extending onto the floor.  *Id*.  The following photograph was taken during Defendant's expert site visit of the SSA Sterling Heights office; the table was set up with the tablecloth positioned by Schmittler to reflect the SSA's practice for tucking in the tablecloth.  *Id*. ¶ 3; ECF No. 26-5, pp. 5–6.



Prior to November 15, 2022, there are no known incidents involving the tablecloth at the Sterling Heights SSA office.  (ECF No. 26-8, Jordan Decl., ¶ 2).

Plaintiff visited the Sterling Heights SSA office on November 15, 2022 for the first time.  (ECF No. 26-2, 37:9–11).  She went in to get "help in figuring out how" to "get taxes taken out of [her] Social Security." *Id*. at 37:12–24.  Plaintiff walked in and checked in at the kiosk.  *Id*. at 38:9–10.  "As soon as [she] entered" the office, she noticed the table with the blue tablecloth against the wall. *Id*. at 41:10–12, 42:18–19.  Security camera footage captures her movements after that.  (Ex. 8–Security Camera 1 Footage; Ex. 9–Security Camera 2 Footage).  She walked across the lobby towards the wall, holding papers in one hand and gloves in the other.  (Ex. 8, 0:00–0:08).  The floor surface was smooth; nothing was uneven or slippery.  (ECF No. 26-2, 39:13–24).  As she approached, she saw the tablecloth's fabric extending onto the floor on its sides "[a]t least six or seven inches" by her estimate.  (ECF No. 26-2, 42:13–20, 52:18–20, 53:21–24).  Nothing obstructed her view as she walked around. *Id*. at 42:10–12.

When Plaintiff got to the table, she stepped directly onto the tablecloth and moved it with her left foot. *Id*. at 56:19–57:5.  She looked at the pamphlets on the wall for approximately 40 seconds.  (Ex. 8, 0:08–0:48).  She

then turned to face the table, with her feet still on top of the tablecloth. *Id*. at 0:48–0:50. The footage shows Plaintiff moving the tablecloth with her feet, sliding the tablecloth's fabric on the floor towards her and back and pulling it out from the position she encountered it in. *Id*. at 0:47–0:53. Her various movements shifted the tablecloth's position from when she encountered it. *Id*. at 0:53–0:58; ECF No. 26-3, p. 3. Then, with her feet still on top of the tablecloth, Plaintiff turned again to face the chairs and entrance. *Id*. at 0:58–1:00). As she turned, Plaintiff pulled the tablecloth away from the table even farther. *Id*. Her foot stayed on top of the tablecloth at its farthest position out, tautening the tablecloth at its leftmost edge. *Id*. Plaintiff then started walking forward. *Id*. With her movement, her left foot stretched the tablecloth out even farther onto the floor, tautening the tablecloth more. *Id*. at 0:58–1:02. Plaintiff kept walking forward, into the taut tablecloth. (Ex. 8, 0:58–1:02.) Her right foot struck the taut tablecloth, but she kept moving forward, tripping. *Id*. at 1:01–1:02. She then slipped with her left foot on the stretched fabric. *Id*. She attempted to regain her balance but fell forward. *Id*. She landed at Window B's partition wall, hitting her head. (Ex. 9, 1:30–1:35).

The PSO immediately rushed over to check on her. *Id*. at 1:34–1:36. SSA employee Kathleen Schmittler, who was working as screener at Window B

6

that day, heard Plaintiff's fall as she was walking back to the window and called Plaintiff's husband for her.  (ECF No. 26-7, ¶ 5).  District Manager Tracie Peifer came out to the lobby and assisted with obtaining EMS.  (Ex. 9, 1:19–1:25; ECF No. 26-6, ¶ 2).  EMS arrived and Plaintiff went to the emergency room.  (ECF No. 26-2, 63:8–10).  Plaintiff fractured her nose and right humerus and had bruising on her face and left knee.  *Id*. at 67:16–68:12.  She had surgery on her nose and her right humerus was treated non-operatively. *Id*. at 83:15–23.

## III.   ANALYSIS

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, when the record contains "a videotape capturing the events in question," the court may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it." *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And the court must "nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff.'" *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

Finally, the summary judgment determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case.  *Id.* at 254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a

9

motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53.

B.       Premises Liability

Under the Federal Tort Claims Act, liability is determined by referencing state law. 28 U.S.C. § 1346(b)(1); *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010). In a Michigan premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. *Mouzon v. Achievable Visions*, 308 Mich. App. 415, 418 (2014) (citations omitted). On a summary judgment motion, a defendant succeeds if they prove that on any of these four elements, there are no remaining issues of material fact and they are entitled to judgment as a matter of law.

A landowner's duty to a visitor depends on whether the visitor is classified as a trespasser, licensee, or invitee. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596 (2000). Defendant argues at length that Plaintiff was a licensee, not an invitee. The court finds that it need not decide this issue because even if Plaintiff were an invitee, she cannot establish

10

actual or constructive notice of the condition and thus, summary judgment in favor of Defendant on her premises liability claim is warranted, as explained in detail below.

The duty owed to invitees is well-established: "a possessor of land owes a duty to exercise reasonable care to protect invitees from dangerous conditions on the land." *Estate of Donna Livings v. Sage's Inv. Grp., LLC*, 507 Mich. 328, 337 (2021) (citing *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 90 (1992)).  But invitors "are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Hoffner v. Lanctoe*, 492 Mich. 450, 459 (2012).  An invitor is liable if it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.  *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016) (quoting *Hoffner,* 492 Mich. at 460).  In other words, a plaintiff must first prove that the defendants had actual or constructive notice of the dangerous condition at issue, and then prove defendant's failure to mitigate in the face of that notice.  *Lowrey*, 500 Mich. at 8.

A defendant has constructive notice if "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises

11

possessor would have discovered it." *Lowrey*, 500 Mich. at 11-12; *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 983-84 (2007) ("Constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements.") (citing *Kroll v. Katz*, 374 Mich. 364, 372 (1965)).  "[I]n response to a summary disposition motion based on an alleged lack of notice, the burden is on the plaintiff to present evidence of actual or constructive notice." *Eggerton v. Detroit Hotel Servs., LLC*, 2022 WL 17874400, at *3 (Mich. Ct. App. Dec. 22, 2022) (citing *Lowrey*, 500 Mich. at 10); *see also Saad v. Menards, Inc.*, 2024 WL 1349306, at *9, (E.D. Mich. Mar. 29, 2024).

> 1.   *Plaintiff has not come forward with evidence that Defendant had actual notice of the condition.*

A premises possessor is liable for an injury "where the premises owner or possessor himself unreasonably creates, tolerates or causes a dangerous condition." *Russell v. Home Depot, Inc*., 2021 WL 3566333, at *5 (E.D. Mich. Aug. 12, 2021), aff'd, 2022 WL 18955863 (6th Cir. Nov. 3, 2022) (quoting *Cerrito v. K-Mart Corp.,* 2011 WL 1519649, at *3 (Mich. Ct. App. Apr. 21, 2011) (citation omitted).  Likewise, a premises possessor may be held liable where the possessor actually knew about a dangerous condition on the land. *Lowrey*, 500 Mich. at 10-11.

12

There is no evidence that any employees at the SSA had actual notice of the condition of the tablecloth draping onto the floor six to seven inches.  The evidence in the record indicates that the office's practice was to tuck the tablecloth's side fabric under the table's legs and keep the tablecloth tucked in at the sides.  (ECF No. 26-7, ¶ 2).  The office did not keep the tablecloth's fabric extending onto the floor.  *Id*.  There is nothing in the record indicating when the tablecloth became untucked or who was responsible for doing so.  Kathleen Schmittler, an SSA employee working on the day of the incident avers in her declaration that, to her knowledge, no employee at the SSA Sterling Heights office changed the tablecloth's position from tucked to untucked.  *Id*. at ¶ 6.  There is no other evidence in the record as to who caused the tablecloth to become untucked.  Thus, Plaintiff has not offered any evidence suggesting that Defendant's employees created or caused the condition of the tablecloth extending onto the floor.  Indeed, the table was in the lobby area, accessible to the public.

Nor has Plaintiff offered any evidence that any SSA employee was actually aware of the condition.  No employees were apparently deposed in this matter and Defendant offers the declaration of Schmittler.  (ECF No. 26-7).  Schmittler, a customer service representative for the SSA who was

working on the day of the incident, avers that she does not recall a time where she saw the tablecloth in a different position from the "heavily tucked" manner she describes as its normal position. *Id*. at ¶ 2. She further explains that on the day of the incident, she worked at Window B as a screener, a location where there is a limited view of the public lobby. *Id*. at ¶ 4. Schmittler says no SSA employees work in the lobby. *Id*. And she does not recall seeing the tablecloth positioned so that the fabric extended on to the floor. *Id*. Plaintiff offers no evidence to the contrary. Thus, there is no evidence in this record that any SSA employee had actual notice of the condition of the tablecloth extending onto the floor. *See Saad v. Menards, Inc*., 2024 WL 1349306, at *9-10, (E.D. Mich. Mar. 29, 2024) (Because there was no evidence in the record that an employee was aware of the edging or responsible for its improper shelving, the court found that the plaintiff did not establish actual notice.).

> 2. *Plaintiff has not come forward with evidence of constructive notice.*

To establish constructive notice, Plaintiff must bring forth evidence "that the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Lowrey*, 500 Mich. at 11-12. Other than Plaintiff's fall, there are no known incidents involving the

14

tablecloth at the SSA office, and the table and tablecloth had been in the office since at least November 2013.  (ECF No. 26-6, ¶ 3; ECF No. 26-8, ¶ 2). The tablecloth was generally kept tucked in at the sides, so Plaintiff cannot establish that the tablecloth's presence in the lobby "was of such a character that [the SSA] should have had notice of it." *Lowrey*, 500 Mich. at 12; (Ex. 6, ¶ 2).

Plaintiff argues that constructive notice is established because there is no evidence of inspection or monitoring on the day of the incident and because SSA staff were present in the building and had access to the lobby. Plaintiff also argues that the hazard was in a high-traffic area and in plain view of all employees.  However, Plaintiff lacks any evidence "as to when the condition arose." *Id*.  She had never been to the SSA office before her visit on November 15, 2022, so she cannot say how long the tablecloth had been positioned as she encountered it.  (ECF No. 26-2, 37:9–11).  There is no other evidence in the record on how long the tablecloth was untucked.  *See Lowrey*, 500 Mich. at 12 (noting summary disposition granted where "[t]he missing link in [the] plaintiff's case [was] any proof as to when the [hazardous condition arose]" (quoting *Goldsmith v. Cody*, 351 Mich. 380, 389 (1958))); *see also Saad v. Menards, Inc.*, 2024 WL 1349306, at *12 (E.D. Mich. Mar. 29, 2024)

15

(finding plaintiff failed to establish constructive notice where she did not present evidence that the condition "was present for a sufficient amount of time such that [defendant] should have discovered it").

A reasonable jury reviewing the record in the light most favorable to Plaintiff could not conclude that the condition of the untucked tablecloth was present for a sufficient amount of time such that Defendant should have discovered it.  *See Pritchard v. NW. Airlines, Inc.*, 111 F. App'x 406, 410 (6th Cir. 2004) ("In the absence of any evidence tending to show how long the condition had existed, a jury could not conclude that [the defendant] should have known of it."); *Kassab v. Target Corp.*, 2017 WL 2880086, at *6 (E.D. Mich. July 6, 2017) ("[T]here is no evidence as to the duration of the alleged hazard …, so it cannot be inferred that this hazard existed for a sufficient time to charge [the defendant] with constructive notice of it.").  Plaintiff "has not carried her burden of establishing a genuine issue of material fact as to notice" because she "present[s] no evidence that would allow one to infer the duration of the condition prior to [the incident], without which we are left only with speculation." *Zoma v. MGM Grand Detroit, LLC*, 2019 WL 1371500, at *2 (Mich. Ct. App. Mar. 26, 2019).  But "[a] 'jury [cannot be] left to speculate as to when a [hazardous condition] occurred to determine whether defendant's

employees had constructive notice.'" *Misko v. Speedway, LLC*, 2018 WL

2431638, at *6 (E.D. Mich. May 29, 2018) (second alteration in original)

(citation omitted); *see Rippy v. Home Depot U.S.A., Inc.*, 2010 WL 891154, at

*3 (E.D. Mich. Mar. 10, 2010) (finding that the duration of the condition was a

"matter[ ] of conjecture" and that "[w]ithout some evidence indicating that the

condition 'existed a sufficient length of time that [Defendant] should have had

knowledge of it,' Plaintiff cannot satisfy the first element of his prima facie

[premises liability] case and judgment in Defendant's favor is proper" (quoting

*Serinto v. Borman Food Stores*, 380 Mich. 637, 640–41 (1968))).

Moreover, the defendant "does not have to present evidence of routine

or reasonable inspection in order to prove that it did not have notice."

*Ramadan*, 504 F. Supp. 3d at 708 (citing *Lowrey*, 500 Mich. at 10).  "Rather, a

defendant can show that it is entitled to summary judgment 'by demonstrating

that [the] plaintiff failed to present sufficient evidence of notice.'" *Id*.

(alteration in original) (quoting *Lowrey*, 500 Mich. at 10).  Again, "in response

to a summary disposition motion based on an alleged lack of notice, the

burden is on the plaintiff to present evidence of actual or constructive notice."

*Eggerton*, 2022 WL 17874400, at *3 (citing *Lowrey*, 500 Mich. at 10).  Plaintiff

17

has not come forward with sufficient supporting evidence to establish a genuine factual issue regarding constructive notice.

    C.    <u>Negligence Claim</u>

Michigan law distinguishes a premises liability claim—which is "premised on a condition of the land"—from a claim of ordinary negligence. *Jeffrey-Moise v. Williamsburg Towne Houses Coop., Inc.*, 336 Mich. App. 616, 625 (2021). "[A] claim of premises liability arises 'merely from the defendant's duty as an owner, possessor, or occupier of land.'" *Id*. at 626 (quoting *Lymon v. Freedland*, 314 Mich. App. 746, 756 (2016)). In contrast, "a claim of ordinary negligence is based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Id*. at 624 (citing *Lymon*, 314 Mich. App. at 756). Therefore, if "plaintiff's claim is based on defendant's duty as the possessor of the land on which [the incident took place], and not upon defendant's ability to conform to a particular standard of care, [then Michigan courts] treat plaintiff's claim as one of premises liability." *Id*. at 625. "A separate action for ordinary negligence emerges where a plaintiff alleges that injury resulted from an activity that is separate from the condition of the land." *Ramadan v. Home Depot, Inc.*, 504 F. Supp. 3d 695, 705 (E.D. Mich. 2020) (citing *James v. Alberts*,

464 Mich. 12, 18–20 (2001)).  Said differently, "Plaintiffs can pursue claims in ordinary negligence for the overt acts of a landowner on his or her premises, and a claim in premises liability for the condition of a premises." *Gorsline v. Speedway LLC*, 2017 WL 4098828, at *5 (E.D. Mich. Sept. 15, 2017) (citing *Kachudas v. Invaders Self Auto Wash, Inc.*, 486 Mich. 913, 913–14 (2010)). Even if the defendant "may have created the condition on the land, that does not transform the premises liability action into one alleging ordinary negligence." *Jahnke v. Allen*, 308 Mich. App. 472, 476 (2014) (citation omitted); *see also Jeffrey-Moise*, 336 Mich. App. at 625 ("Although plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees—or more accurately, their failure to act—that allegation does not transform a premises-liability action into one of ordinary negligence.").  As noted, Michigan "[c]ourts ... look to the language of the complaint when determining the nature of a plaintiff's claim." *Ramadan*, 504 F. Supp. 3d at 707 (citing *Wheeler v. Central Mich. Inns, Inc.*, 292 Mich. App. 300, 304 (2011)).

Plaintiff's negligence claim alleges that Defendant owed a duty to prevent a dangerous condition that being the placement of an oversized tablecloth on a table that dragged on the floor.  And, that act or omission caused Plaintiff's foot to become entangled in the oversized tablecloth,

causing her to fall.  (ECF No. 1, ¶¶ 10-11).  Where courts have found both claims to be cognizable, there are distinct acts which give rise to possible liability, and contemporaneous, overt acts being done by a party.  For example, in *Sundberg v. Oberstar, Inc.*, 2020 Mich. App. LEXIS 7550, *12 (Nov. 12, 2020), when a plaintiff entered an office building to arrange a webinar, she asked an employee where the bathroom was.  The employee pointed to two doors; the plaintiff opened one and stepped through – only to discover there was no floor and fell to the basement, eight feet below.  Her premises liability claim about the floorless room also supported an ordinary negligence claim for the employee's act of directing her toward the drop-off and failure to intercede when they saw her headed toward peril.  *Id*.  And in *Cote v. Lowe's Home Ctr.*, 896 F. Supp. 2d 637 (E.D. Mich. 2012), a plaintiff was hit by a falling box when an employee was stacking boxes.  *Id*. at 649.  That claim too sounded in both premises liability and ordinary negligence based on the employee's actions.  But in *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1 (2018), the plaintiff could not sue under both theories because the only negligence they alleged was the manner in which an employee had stacked pallets on a warehouse floor.  Even though that could (perhaps) be fairly described as an employee's negligent conduct, the claim itself sounded only

20

in premises liability: the duty to not create a hazardous condition on the land. *See id.* at 14-16.

This case is just like *Pugno*, in which the court found no claim for ordinary negligence where the plaintiff alleged that the defendant failed to properly stack the pallets and keep them from falling, failed to ensure that the stack would not fall over, and stacked the pallets to an unsafe height using defective pallets. *Id.* at 14. The court found that these allegations sounded in premises liability and not ordinary negligence:

> All of plaintiff's allegations focus on the hazardous condition, Blue Harvest's duty to protect plaintiff from the hazardous condition, or how Blue Harvest created the condition. These allegations relate to the condition of the premises, i.e., the stack of pallets, and the complaint sounds in premises liability only.

*Id.* at 14. Here, Plaintiff's negligence claim alleges that Defendant owed a duty to prevent a dangerous condition when it placed an oversized tablecloth on a table that dragged onto the floor. Just as in *Pugno*, these allegations focus on the duty to protect Plaintiff from a hazardous condition or how Defendant created that condition. Thus, the allegations relate to the condition of the premises (the placement of the tablecloth) and the complaint sounds in premises liability only. Defendant is therefore entitled to summary judgment on Plaintiff's negligence claim.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. Given the foregoing conclusion on Defendant's motion for summary judgment, the court **DENIES** the motion to exclude the testimony and opinions of Plaintiff's experts as moot.  This is a final order and closes the case.

**SO ORDERED**.

Date: February 12, 2026                    s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge